**LANCES et al. v. LETZ.**

No. 98.

Circuit Court of Appeals, Second Circuit.

Dec. 2, 1940.

Joseph Rilander, of New York City, for plaintiffs-appellants.

William J. Dowd, of New York City (Hornidge & Dowd, of New York City, on the brief), for defendant-respondent.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The parties here are competitors in the business of manufacturing and marketing sculptural "bras" or brassieres. We have to determine whether or not an incipient controversy between them had become so dead by the time this action was brought as not to furnish a case for a declaratory judgment.

On February 4, 1939, defendant's attorney addressed a letter to the plaintiff Edith Lances—with whom the other plaintiffs do business under the firm name of Edith Lances Brassieres—asserting that the cut of plaintiffs' brassiere was an infringement of defendant's patent No. 1,942,250 and stating that the purpose of the letter was "to inform you of the fact that Miss Letz will adopt any and all legal means and procedure provided by the civil law to restrain the infringement of her patent, and for the recovery of any damages which she has sustained or may sustain in connection with such infringement by anyone." The letter continued: "However, in view of the circumstances, if you would prefer to take up the subject matter on a basis amicable both to you and to Miss Letz, I would appreciate hearing from you." Plaintiffs' response to this opening was decidedly reserved. On March 22, their attorney wrote defendant's counsel that the garments manufactured by his clients did not infringe any claims of the patent, that plaintiffs' article in question was in public use prior to defendant's patent application, that defendant copied the plain-

tiffs' brassiere, and that they had "still other evidence" to show that defendant's claims were "entirely invalid" because of prior art. And this letter closed: "If you should care to take this matter up with me further, I will be glad to have you call upon me." On July 6, new counsel for defendant addressed plaintiffs' attorney, calling attention to the previous correspondence as to "the alleged infringement" and saying, "Our client is anxious to litigate this matter but in view of the statements in your letter, we would prefer to have a conference with you on the question of noninfringement and invalidity before proceeding, if you will please assemble for our inspection the material mentioned in your letter of March 22nd. Trusting to see you at an early date, we are," etc.

And so the inspection was duly had on August 28, but by still another attorney on behalf of the defendant, who avers that his only duty was to look and report back, which he did. Plaintiffs assert, by affidavit of their counsel, that this latest attorney agreed to "let me know within a week or two his client's disposition in this matter." There being complete silence from defendant or anyone representing her, plaintiffs commenced this action on November 17, 1939, to test the validity of defendant's patent by way of a declaratory judgment. The district court dismissed the action on summary judgment after answer was filed, stating that whether or not a controversy between the parties was initially disclosed, it was not shown to have continued to the date of commencement of the suit.

■ We believe it a fair interpretation of the remedial provisions of the declaratory judgment statute, 28 U.S.C.A. § 400, and of Federal Rule of Civil Procedure 57, 28 U.S.C.A. following section 723c, that one cannot so brashly initiate a controversy by such extensive threats of litigation as were here involved and then avoid the risk of judicial adjudication by mere nonaction. One of the situations where the declaratory judgment is most helpful is that of patent litigation where a threat of suit for infringement has been made and not pressed for the attention of a court. "This has had a most beneficial effect in curing what had become a racket. For patentees, none too sure of the validity of their patents, had often notified customers or licensees of their rivals or competitors of their intention to bring suit against all who dealt in the product in question." Borchard, Declaratory Judgments, 9 Brooklyn L.Rev. 1, 30, 1939; cf. Leach v. Ross Heater & Mfg. Co., 2 Cir., 104 F.2d 88, 91; E. I. Du Pont De Nemours & Co. v. Byrnes, 2 Cir., 101 F.2d 14; Zenie Bros. v. Miskend, D.C.S.D.N.Y., 10 F.Supp. 779; Mitchell & Weber, Inc. v. Williamsbridge Mills, D.C.S.D.N.Y., 14 F.Supp. 954; 45 Yale L.J. 160, 1935, 1287, 1936. And when the threat of action is made, we do not believe plaintiffs must go further and show that infringement notices have already been sent to the trade; the position of peril and insecurity for plaintiffs already exists. Borchard, Judicial Relief for Peril and Insecurity, 45 Harv.L.Rev. 793, 1932; Borchard, Declaratory Judgments, 1934, 5, 307; 45 Yale L.J. at 163; Caterpillar Tractor Co. v. International Harvester Co., 9 Cir., 106 F.2d 769, at page 773; Interstate Cotton Oil Refining Co. v. Refining, Inc., D.C.Nev., 22 F.Supp. 678.

■ Here the initial threat was even emphasized when defendant continued to maintain her position through successive counsel. Defendant asserts that all these movements were only exploratory, that the changes in counsel came because the first ones were not patent experts and the second were in the enviable position of being too busy to make the inspection tour in person, and that the lack of further affirmative action on her part showed that the controversy was not being pressed. But there certainly was nothing in the situation, so far as the plaintiffs knew or were informed, to make unreasonable a conclusion on their part that she was lying in ambush to use her claim of patent infringement when it would be most damaging. In truth, she does not even disclaim this possible maneuver in her answer herein, for she simply states, rather disingenuously, that, after receiving the report of her attorney, she "determined temporarily to do nothing further in the matter until she could consult again with" her lawyers (the ones who were previously too busy to act) "and secure their opinion." And she adds that she "does not know" whether or not the plaintiffs' brassieres are an infringement of her patent and that she "has relied wholly in this matter" upon these attorneys. Since her answer was filed, these attorneys have given way to

yet new counsel. We think the time has come when this lady must either repudiate her original claims or consent to an adjudication of them.

Reversed.