## McCURRACH et al. v. CHENEY BROS.
### No. 20.

Circuit Court of Appeals, Second Circuit.

Nov. 19, 1945.

John B. Cuningham, of New York City, for plaintiff.

Thomas J. Byrne, of New York City, and Joseph K. Schofield, of Hartford, Conn., for defendant.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

Both parties appeal from a judgment which (1) held that the defendant had infringed both claims of the plaintiff's patent No. 2,178,893, granted to Mabel C. McCurrach on November 7, 1939; (2) which dismissed, though not upon the merits, a cause of action under § 66, Title 35 U.S.C.A., upon an alleged interference between the plaintiff's patent and Patent No. 2,291,531, granted to Cheney and Tedford on July 28, 1942, and owned by the defendant; and (3) which dismissed, also not upon the merits, a cause of action to declare that the plaintiff's product did not infringe the claims of the defendant's patent and that that patent was invalid. Both patents "related to neckties," but, in the view that we take it will not be necessary to describe the defendant's in detail. The plaintiff's patent is "to provide improved means * * * for producing a predetermined indentation or pleatlike drape formation in the front of the necktie just below the knot" (p. 1, lines 6-11). (This is commonly called a "dimple," and is meant to give the tie a more pleasing appearance.) The means employed is a "forming element" in the shape of an M in cross-section, separate from, and inside, the main fabric of the tie. Since most ties have an inner lining, the "forming element" is either attached to it, or is a part of it. When the tie is made up, the main fabric—silk or other—follows the middle fold, or "valley," of the M just below the knot. In one form the "forming element" is a separate "preformed pleated piece of any suitable material which is pliable and capable of retaining a fold or pleat. Preferably it consists of a textile fabric which may be relatively heavy" (p. 1, lines 26-30). It is "formed with two longitudinally extending parallel pleats, each affording an apex or fold line * * *. Intermediate of the pleats is another pleat or fold line, 15, which projects towards the rear" (p. 1, lines 31-37). (This is what we have called the "valley" of the M.) The "forming element" may be "stiffened by a suitable backing, or by being coated or impregnated" (p. 1, lines 53-54). The specification also disclosed a variant of the "forming element"; i. e., "an integral stiffened, pleated section, 23, which affords a conformation and arrangement" like the first form (p. 2, lines 14-16). The plaintiff made up some assortments of neckties according to the patent, and sold them to three dealers, who advertised them in 1939. They were marketed for about eighteen months, but production was discontinued, owing to the scarcity of materials during the war. The extent of the sales is not shown; and the possible success of the necktie in making any place for itself in the market remains to be determined; it cannot be said to have been a failure; nor can it be said to have been a success.

The plaintiff's patent was not the only effort to produce a "dimple" in a necktie. On March 17, 1936, Patent No. 2,034,652 was issued to Fallar & Fallar, for that purpose. There were two forms of this; in one the edges of the lining of the necktie were reinforced, the idea being that the reinforcement would bring the edges forward when the tie was made up, making a "valley" at each side, and forcing the center part of the material forward into a bulge. The second form was to produce a "dimple" like the patent in suit, either by a lining in two pieces stitched together in the center and at the sides, with vertical slits between the stitching; or by a single lining with two vertical slits near the margin. The notion as to this was that, when the tie was made up, the slits would cause the lining to bulge forward at the sides making a "dimple" in the center. On April 5, 1938, one, Kleinmann was granted Patent No. 2,113,113, whose object was "to provide a four-in-hand tie with a longitudinally creased reinforcement whereby the center longitudinal outer portion of the tie is

shaped to produce a ridged appearance on the outer side" (p. 1, lines 7-11). A lining of the usual sort was to be slit along the center; or, if it was "quite flexible," it need only be folded. Over the cut or fold "a sheet of strong, fairly stiff fabric, 20, is folded along its longitudinal center, as in Fig. 6, and is secured by an adhesive, 21, to each side portion of the folded lining" (col. 1, line 51; col. 2, lines 1-4). The lining so reinforced pushes the material of the tie forward into a bulge: the desired "ridged appearance." Cloke, in Patent No. 1,990,167, granted on February 5, 1935, also disclosed a method of producing a "dimple" in the same place as McCurrach, though by quite different means, and so did Goldman, on April 19, 1938, in Patent No. 2,114,376.

It is conceivable, since the limitations upon manufacture imposed by the war have now ended, that the plaintiff's tie may in time have wider acceptance than any which it has had so far; and if so, we might be convinced on another record that the art had really been waiting for it; and this might in turn satisfy us that Mrs. McCurrach made an invention, as we were satisfied in Kurtz v. Belle Hat Lining Co., 2 Cir., 280 F. 277, and Franc-Strohmenger & Cowan Inc. v. Arthur Siegman, Inc., 2 Cir., 27 F.2d 785. But, as the record stands, there is no setting or background which convinces us that what she did was more than to vary a device already known to her to produce a result, not new in conception; and that too, a device which, up to the present time, has proved sterile. We do indeed yield our naive conclusions drawn from a comparison of a patented disclosure with the earlier approaches of the art, when we can find valid history to correct them. If the need has existed for a long time; if there have been repeated unsuccessful efforts; if the patent has put aside what went before and occupies the field alone: if that is what the evidence shows, we have repeatedly said that the apparent simplicity of the solution will not prevail. All this is very trite and threadbare; and it does not help the plaintiffs here. Cloke filed his application less than four years before Mrs. McCurrach; Fallar less than four; Goldman less than one; so that the art did not have to wait long for her. Even so, if her tie had gone into wide favor, we might feel bound to say that there must have been difficulties we do not understand; but that conclusion would be premature, as we have said. The record nowhere challenges the operability of Fallar's device; certainly it is as simple and convenient as hers, and incidentally it is far closer to the defendant's tie.

■ Nor can we credit Mrs. McCurrach with any substantial originality in the means which she chose. We have described Kleinmann's second patent which disclosed an inverted V as a means of producing a "ridged" front to a tie. Two such Vs side by side form an M, the "forming element" of the patent in suit. The plaintiffs had acquired this patent before the invention was made; they had actually experimented with it, and although the only testimony is that "it just doesn't work," its serves to limit the scope of any originality which the patentee actually contributed, however little it might have counted as part of the prior art. All that in fact she did was to make a "dimple" in a tie by duplicating the Kleinmann's stiffener; and, whatever we might have felt forced to concede, had that proved a revelation to the art, so far it has proved of no consequence. As things stand, it is one of those trifling variants which an art throws out spontaneously under the stimulus of trial and error at the hands of commonplace ingenuity in which, happily for us, our people abound. We hold the patent in suit invalid for lack of invention and the first cause of action must be dismissed for that reason.

■ This decided, the cause of action for interference must also be dismissed and upon the merits.

■ As to the third cause of action, at the trial the defendant expressly disclaimed any claim that the plaintiff infringed its patent, and there was no room thereafter for a declaratory judgment as to invalidity. Cover v. Schwartz, 2 Cir., 133 F.2d 541.

Judgment reversed upon the first and second causes of action and complaint dismissed upon the merits.

Judgment affirmed on the third cause of action.

CLARK, Circuit Judge (concurring).

I agree generally, though I think refusal of the declaratory judgment as to defendant's patent should be placed expressly on grounds of discretion and lack of utility of such a declaration where defendant has specifically disclaimed any assertion of infringement and the issue of validity has not been adjudicated below, Borchard, Declaratory Judgments, 2d Ed.1941, 299, 307, and should not be left with the ambiguous

statement that there is no "room" for a declaratory judgment. Since the statement may mean no more than I have said, I should have refrained from adverting to the matter but for the supporting citation of a case—dealing, it is true, with other facts not directly involving the declaratory procedure—which went on the arid ground of lack of "jurisdiction." As there, there seems to me undoubted general jurisdiction here, cf. 52 Yale L.J. 909; Borchard, Challenging "Penal" Statutes by Declaratory Action, 52 Yale L.J. 445, 449, n. 10; 1 Moore's Federal Practice, 1942 Cum.Supp., 133-135; and I am convinced that it is quite undesirable to suggest limitations on this useful procedure by any unusual resort to the vague abstraction of jurisdiction. Actions may speak louder than words, even in law; and there may well be cases where a defendant's acts show an actual controversy, notwithstanding the protective screen of a verbal disclaimer. Moreover, the Supreme Court has now admonished us not to avoid the issue of validity, and has stressed "what will usually be the better practice" of "inquiring fully into the validity" of a patent. Sinclair & Carroll Co. v. Interchemical Corporation, 325 U.S. 327, 65 S.Ct. 1143, 1145.