## LIBBEY–OWENS–FORD GLASS CO. v. SYLVANIA INDUSTRIAL CORPORATION et al.

Circuit Court of Appeals, Second Circuit.

March 26, 1946.

Writ of Certiorari Denied June 3, 1946.

See 66 S.Ct. 1353.

FRANK, Circuit Judge, dissenting.

Howson & Howson, of New York City (Dexter N. Shaw, of Philadelphia, Pa., and Leslie D. Taggart, of New York City, of counsel), for defendants-appellants.

Alan N. Mann, of New York City (William D. Burrows, of New York City, of counsel), for plaintiff-appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

To this action for infringement of a patent, Fed.Form 16, Federal Rules of Civil Procedure, Appendix of Forms, 28 U.S. C.A. following section 723c, defendants filed three defenses: first, admissions and denials of the paragraphs of the complaint, including denials of infringement and of the validity of the patent sued on; second, invalidity of the patent for lack of invention, ambiguity, etc., listing prior patents, publications, and user in detail; and third, "unclean hands," in that plaintiff was using its patents unlawfully to extend its purported monopoly. Plaintiff moved under Federal Rules of Civil Procedure, rule 12 (b) (6), 28 U.S.C.A. following section 723c, to dismiss the Third Defense as a matter of law, and defendants moved for summary judgment under Federal Rule 56 on the basis of this defense. The parties filed affidavits, and the judge then wrote a considered opinion, D.C., 64 F.Supp. 516, holding the defense good as a pleading, but insufficient in law upon the "uncontradicted facts." He therefore stated that plaintiff's motion would be granted, and defendants' motion denied; and the order in question is in the limited form of dismissing the "Third Defense" in defendants' answer and denying defendants' motion for summary judgment. Without attempting to proceed further below, defendants took this appeal, which plaintiff has moved to dismiss on the ground that the order from which it is taken is not a final judgment.

■■ An order merely striking one of several defenses and allowing the action to continue for adjudication of the rest would seem as nearly interlocutory as any pleading ruling can ever be; and such has been the universal view, both before the adoption of the new civil rules, United States v. Continental Casualty Co., 2 Cir., 69 F.2d 107; Rexford v. Brunswick-Balke-Collen-

der Co., 228 U.S. 339, 33 S.Ct. 515, 57 L.Ed. 864, and since, United States v. Florian, 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105, reversing (and restoring the first opinion in) Florian v. United States, 7 Cir., 114 F.2d 990; Shultz v. Manufacturers & Traders Trust Co., 2 Cir., 103 F.2d 771; Leonard v. Socony-Vacuum Oil Co., 7 Cir., 130 F.2d 535; Audi Vision, Inc. v. RCA Mfg. Co., 2 Cir., 136 F.2d 621, 147 A.L.R. 574 (decided by the court now sitting); Oppenheimer v. F. J. Young Co., 2 Cir., 144 F.2d 387; Toomey v. Toomey, App. D.C., 149 F.2d 19; and Markham v. Kasper, 7 Cir., 152 F.2d 270. This carries out a federal policy going back to the early days of the Republic, which "has shown no signs of weakness in recent years," the "philosophy" of which "is that many mistakes, apparently important at the time, will be seen to be trivial from the perspective of a final disposition of the case, and that disputes will therefore be more expeditiously settled." Perkins v. Endicott Johnson Corp., 2 Cir., 128 F.2d 208, 211, 212, affirmed Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L. Ed. 424. It is reiterated as a policy of desirable and affirmative substance "against piecemeal litigation" in Catlin v. United States, 324 U.S. 229, 233, 234, 65 S.Ct. 631, citing the Florian and other cases.[1]

■ Defendants, however, assert that "there are two separate and distinct sets of facts involved in this case," citing Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478. But that case assumed and relied on the general rule against splitting appeals, re-enforced in Federal Rule 54(b), in order to make the decision made necessary under that rule as to whether the appeal there had been taken from one of two separate and distinct claims, based upon "differing occurrences or transactions." It lends no countenance to the idea that differing defenses to the same claim may be reviewed in piecemeal fashion. That would mean that pleading rulings on a multitude of matters could be separately appealed, e. g., separate rulings concerning payment, release, statute of limitations, estoppel, accord and satisfaction, and other matters stated in Federal Rule 8(c), all of which are more distinct from the main claim than is the defense here involved. For it is quite clear that the defendant of unclean hands need not be pleaded, but, since it goes to the heart of the plaintiff's case, may be taken up without affirmative claim therefor. Gynex Corp. v. Dilex Institute of Feminine Hygiene, 2 Cir., 85 F.2d 103, 106; General Electric Co. v. Hygrade Sylvania Corp., D.C.S.D.N.Y., 45 F.Supp. 714, 718, and cases cited.

■ Indeed, the facts here must be examined to note how closely intertwined is this defense with the validity of the patent. Defendants' pleading itself, set forth in full in the note,[2] is rather blind; but the affidavits make clear what is meant. Plaintiff's patent, No. 2,056,462, is for an invention in the manufacture of molded articles from urea and formaldehyde. It has both product and method claims, covering a molding composition, or powder, made and sold by plaintiff, which, upon the application of heat and pressure according to the methods stated, may be shaped and hardened into plastic articles. Purchasers of the composition receive an implied license to use the process, while the grant of licenses under the method claim (of which two are now outstanding) is confined to those persons who purchase the composition. The legal claim is that this extends the monopo-

[1] Overruling several cases, including United States v. 243.22 Acres of Land, 2 Cir., 129 F.2d 678, certiorari denied Lambert v. United States, 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558, which had allowed appeals from judgments of "taking" in condemnation cases.

[2] "Third Defense. Defendants aver that plaintiff is not entitled to maintain this action or to the relief sought, because plaintiff is using said Letters Patent No. 2,056,462 unlawfully to extend the alleged monopoly purporting to be granted by the method claims thereof by selling, and licensing others to sell, molding compositions with an implied license to the purchasers thereof to practice the methods purporting to be claimed by the said method claims and by confining the grant of licenses under the method claims to those persons who purchase from the plaintiff, or its licensees, the products to be utilized in carrying out the method purporting to be patented, and further because plaintiff in this action against these defendants for alleged infringement of said method claims is using said Letters Patent No. 2,056,462 unlawfully in an attempt to extend the alleged monopoly purporting to be granted by the said method claims in an effort to interfere with the sale of products not patented thereby."

ly of the method claim beyond its scope and to the products made by the process; and there is cited the well-known series of cases culminating in Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, that the monopoly of a patent cannot be pressed to include an unpatented article. But Judge Bright, below, following Judge Leibell in General Electric Co. v. Hygrade Sylvania Corp., D.C. S.D.N.Y., 61 F.Supp. 531, did not see how this doctrine could apply, because the product itself was patented and there was no extension of the patent beyond what the patent grants. And this seemed to follow, because the combination of method and product claims in one patent is not illegal. Musher Foundation v. Alba Trading Co., 2 Cir., 150 F.2d 885, 889, certiorari denied Alba Trading Co. v. Musher Foundation, 66 S.Ct. 175.

In fact, this seems to go beyond the doctrine of unclean hands and to go to the validity of the patent itself, for, unless these claims are invalid, plaintiff seemingly can rely upon express claims in the patent for everything it has or asserts. Of course we are not settling this issue, but only pointing to its vital significance on the main issue of patent validity and the lack of even as much possible basis as with some other defenses for asserting it to involve a "differing occurrence or transaction" from the one sued upon. As a matter of fact, defendants—even under their other defenses, as we have seen—may present any facts or law supporting their contentions to the court below until the judgment does become final. Western States Mach. Co. v. S. S. Hepworth Co., 2 Cir., 152 F.2d 79.

■ In their memorandum of law to us defendants made a passing suggestion that their Third Defense was the type of claim which "could have been labeled a counterclaim" or "could have been set forth as the complaint in an action against the plaintiff" —a contention exploited somewhat more in a supplemental memorandum. This is an afterthought not presented below, and should not be considered now, United States v. Bennett, 2 Cir., 152 F.2d 342, 349, and cases cited, particularly as the allegations are not at all adequate under cases such as Lances v. Letz, 2 Cir., 115 F.2d 916, and McCurrach v. Cheney Bros., 2 Cir., 152 F.2d 365, to support a claim for a declaratory judgment. Had the matter been raised below, however, the defendants would have faced an obvious dilemma. If they had gone so far as to state a counterclaim upon a differing occurrence or transaction so that judgment upon it would have been appealable under Federal Rule 54(b), it would have been merely a permissive counterclaim under Federal Rule 13(b), and hence would require separate grounds of jurisdiction and perhaps venue —very likely lacking here. Derman v. Stor-Aid, Inc., 2 Cir., 141 F.2d 580; Lesnik v. Public Industrials Corp., 2 Cir., 144 F.2d 968; 1 Moore's Federal Practice 695–700, id. 1945 Cum.Supp. 329–331; Crosley Corp. v. Westinghouse Electric & Mfg. Co., 3 Cir., 130 F.2d 474, 476, certiorari denied Westinghouse Electric & Mfg. Co. v. Crosley Corp., 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546; Leaver v. Parker, 9 Cir., 121 F.2d 738, certiorari denied Leaver v. Citizens Nat. Trust & Savings Bank of Riverside, 314 U.S. 700, 62 S.Ct. 480, 86 L.Ed. 560. But if defendants kept to their contention made here that the patent was invalid, they would be met with the cases holding that a counterclaim asking for no more than a defendant's judgment on the original claim was a mere superfluity. See, e. g., Leach v. Ross Heater & Mfg. Co., 2 Cir., 104 F.2d 88; Altvater v. Freeman, 319 U.S. 359, 364, 369, 63 S.Ct. 1115, 87 L.Ed. 1450; 1 Moore's Federal Practice, 1945 Cum.Supp. 318–320.[3]

■ Of course where jurisdiction exists and no question of separate appeal is involved, this question is not important. Cf. Barber Asphalt Corp. v. La Fera Grecco Contracting Co., 3 Cir., 116 F.2d 211. On the question of appeal, however, the case is not aided by the filing of a compulsory counterclaim, for it is now settled that dis-

---

[3] The issue which has somewhat divided the courts is not whether there should be a merely redundant counterclaim—for which none of the courts contend—but as to the time of deciding this point, in fact, whether or not the counterclaim should be held until trial to see if then there arises even an "infinitesimal" need for relief, as mentioned in the dissent in the Altvater case, 319 U. S. 359, 369, 63 S.Ct. 1115, 87 L.Ed. 1450. See Moore, loc. cit. supra; Borchard, Declaratory Judgments, 2d Ed. 1941, 812–814. In the Altvater and Mercoid cases there was no question of appealability, since both judgments were completely final.

missal of such a counterclaim is not separately appealable. This question was directly raised and considered at length in Audi Vision, Inc. v. RCA Mfg. Co., supra, where the appeal was dismissed; and that case has been expressly cited and followed in Toomey v. Toomey and Markham v. Kasper, both supra. It is the view of Professor Moore, 3 Federal Practice, 1945 Cum.Supp. 55, 140, 141, and of the Advisory Committee, which has reframed and restated Federal Rule 54(b) around it. See Second Preliminary Draft of Proposed Amendments to Rules of Civil Procedure, May, 1945, 62, 63. It is true that earlier Jefferson Electric Co. v. Sola Electric Co., 7 Cir., 122 F.2d 124, had held dismissal of such a counterclaim to be a final order; but as pointed out in the cases and authorities cited, the court appears to have been misled by the effect of Federal Rule 41(b, c), making such a dismissal an adjudication upon the merits. It did not cite the more pertinent and decisive rule, 54(b). In that case the final judgment, resting on a different ground, 7 Cir., 125 F.2d 322, was reversed for dismissal of the counterclaim in 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165; but since this point was not brought before the Supreme Court, the later proceedings are not significant here.[4] More recently, however, that Circuit cited and followed the ruling of the Audi Vision case in Markham v. Kasper, supra; and there seems now no dissent from it.

The broadening of the scope of the civil action by the new civil rules led not unnaturally to some initial confusion as to the working of Federal Rule 54(b), which has now been settled by the precedents even without the Committee's proposed amendment. The law now carries out the historic federal policy. Of course there may be times when a quick appellate decision on a part of the case may be helpful, though one may expect that will rarely be so on the bitterly fought antitrust problems. But the policy is the fruit of experience and embodies a general judgment which is not to be cast aside for an occasional aberrant case. And the policy is more broadly based than merely upon the natural desire for the expeditious and direct way of handling a particular case; for it eschews the whole practice of encouraging appeals on rulings concerning the perfectibility of pleadings and the resulting emphasis upon pleading technicalities which ensues.[5] And even if there be individual judicial doubts about the policy, it nevertheless seems both desirable and necessary that it be followed; for that is the essence of a procedure uniform throughout the country.

Appeal dismissed.

FRANK, Circuit Judge (dissenting).

1. My colleagues, I think, have brushed to one side at least seven recent decisions of the Supreme Court,[1] together with a half-dozen or more of our own, to reach a conclusion which, if it becomes a precedent, will seriously interfere with sound judicial administration of the patent and anti-trust laws. For it frustrates the policy, often recently announced by the Supreme Court, that the owner of a valid patent may not enforce it against infringers if the owner has abused the patent monopoly by using it in a manner violative of the anti-trust laws.

I shall try to show below (point 6) that

---

[4] In fact from the rather voluminous record in the Supreme Court, dealing with the most important issues of patent law, it would be difficult to discover the history of this particular prior step. No mention of it appears in the petition or briefs for certiorari; and there are only the most fleeting references to it in the reprint of the opinion below, 7 Cir., 125 F.2d 322, at page 323, and in a sentence in petitioner's brief. Hence, not having occasion to do so, the Supreme Court did not pass on the question whether the counterclaim was compulsory or permissive.

[5] As in state practice, where interlocutory appeals are favored, Audi Vision, Inc. v. RCA Mfg. Co., 2 Cir., 136 F.2d 621, 625, 147 A.L.R. 574; and see particular examples cited in Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, at page 907, n. 5, certiorari denied 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572.

[1] Morton Salt Co. v. Suppiger Co., 314 U.S. 488, 489, 62 S.Ct. 402, 86 L.Ed. 363; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367; Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478; Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165; and Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450; Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Precision Co. v. Automotive Co., 324 U.S. 806, 65 S.Ct. 995.

defendants' "Third Defense" should be treated as a counterclaim setting up such patent abuse. On that assumption, the crucial question in the instant case is this: When a defendant in a patent infringement suit interposes such a counterclaim, is it a "permissive" or a "compulsory" counterclaim? For everyone agrees that, if it is "permissive," a district court order dismissing it, leaving the balance of the case still to be tried, is separately appealable. Everyone agrees, too, that, if a counterclaim is not "compulsory," it is "permissive" and that the following is the acid test in distinguishing the two: If a defendant fails to set up a "compulsory" counterclaim, he cannot in a later suit assert it against the plaintiff, since it is barred by res judicata; but if it is "permissive," then it is not thus barred. To put it differently, if a counterclaim is the kind not thus barred, it is "permissive." We have recently employed that test; see Clair v. Kastar, 2 Cir., 138 F.2d 828, 830; See also Moore, Federal Practice, 682; Clark, Code Pleading, 447; Big Cola Corp. v. World Bottling Co., 6 Cir., 134 F.2d 718.

Now in Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, the Supreme Court squarely held that, if a defendant omits to assert a patent-abuse defense or counterclaim, res judicata does not prevent him from asserting it in a subsequent infringement suit against him on the same patent. By the decisive (res judicata) test, such a counterclaim is accordingly "permissive." In the light of the foregoing, I see no escape from the conclusion that an order dismissing a patent-abuse counterclaim is separately appealable.

That reasoning seems to me to compel a decision that the district court's order here is now properly before us on defendants' appeal. But, as my colleagues do not agree, I think it desirable to expand my reasoning, first, however, for clarity, stating the facts to include some omitted from my colleagues' opinion.

2. Defendants set up in their answer alternative defenses—(a) that the patent is invalid and not infringed by them and, (b), in their "Third Defense," that, even if the patent is valid and infringed, nevertheless plaintiff is not entitled to enforce it because, in dealings with persons other than defendants, plaintiff has abused the patent monopoly in violation of the antitrust laws. Defendants' answer concluded with a prayer "for such other and further relief as the court may deem just." Plaintiff moved to dismiss this patent-abuse part of the defendants' answer, urging that it failed "to state a claim upon which relief can be granted," and the judge's opinion shows that he regarded that as the question before him. Defendants, at the same time, moved for summary judgment on that claim. Both sides filed affidavits from which the district court concluded that "the facts material to the defense are not disputed."[2] Those were facts which, having to do entirely with the way plaintiff did business with third persons not parties to the suit, in no way appeared on the face of plaintiff's complaint, or on the face of the patent, and which could not legitimately constitute any part of plaintiff's or defendants' proofs on the issues of patent validity and infringement. The district judge held the patent-abuse ("unclean hands") defense "good as a pleading" but insufficient "on the merits." He denied the motion for summary judgment and entered an order which dismissed defendants' claim (again, "on the merits").[3] As all the facts bearing on the issue of patent-abuse were thus undisputed and before the district court, the dismissal order left defendants with no way of amending

---

[2] Plaintiff's attorney, in an affidavit attached to plaintiff's motion to dismiss this appeal, said that in the district court "both sides introduced affidavits which set forth all the relevant facts without disagreement as to any material fact."

[3] In his opinion the judge said: "Clearly, the defendants' plea of defense is on its face sufficient to present an issue of 'unclean hands' * * * As a pleading, the defense is good. Upon the merits, as revealed by the uncontradicted facts stated in plaintiff's moving affidavit and adopted in the defendants' moving papers, it is insufficient." In his order, the

judge said: "The Court, upon consideration having found that, as a pleading the defense is good, but that upon the merits as revealed by the uncontradicted facts stated in plaintiff's moving affidavit and adopted in defendants' moving papers, it is insufficient, it is Ordered that the 'Third Defense' in defendants' Answer be dismissed * * *"

Of course, defendants do not appeal from that part of the order denying their motion for summary judgment. Nor could they do so; Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F. 2d 130, 135.

their pleadings so as to revive that issue in the district court, prior to the trial on the other issues.

The consequence is that, so far as the district court is concerned, the patent-abuse issue has been as completely disposed of as if it had been separately tried and as if final separate judgment thereon had been entered against defendants. On the motion now before us—to dismiss defendants' appeal, not from the denial of summary judgment but solely from the dismissal order—we must assume, arguendo, that the district court's order was erroneous on the merits.[4] Making that assumption, as we must, it follows that, if that order is not now reversed, defendants will be forced to go to trial—ex hypothesi, uselessly—on the distinct issues of patent invalidity and infringement, usually a most expensive process. My colleagues, however, hold that no other course is open to defendants, i. e., that defendants cannot have this court pass on the order dismissing the patent-abuse claim until a trial has been concluded on the other issues and judgment has been entered thereon.

3. This conclusion results from the fact that my colleagues hold that a defense of patent-abuse is like a defense of payment or statute of limitations, and that therefore, if regarded as a counterclaim, it is "compulsory." They reach that conclusion by disregarding the procedural decision in Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376. There the defendant, Mercoid, when sued as a contributory infringer, by plaintiff, Mid-Continent, pleaded, both in its answer and in a counterclaim, that Mid-Continent and its exclusive licensee had conspired to expand the patent monopoly in violation of the anti-trust laws. Mercoid had been privy to a previous suit in which the patent had been held valid, but the patent-abuse defense had not been interposed in that case, although Mercoid then knew all the pertinent facts concerning it. The Supreme Court held that the judgment in the prior suit did not constitute res judicata so as to bar either the defense or the counterclaim in the second suit. It seems inescapable, then, that such a counterclaim is "permissive," not "compulsory."

My colleagues casually remark that the Mercoid case did not involve the question of the separate appealability of an order

dismissing the counterclaim. But that remark is pointless. For, as the patent-abuse counterclaim was there held "permissive" (i. e., not barred by res judicata), it necessarily follows that, had it been dismissed by a separate order in advance of the disposition of the rest of the suit, it would have been appealable forthwith. No one will dispute, I think, the following statement made by Moore, Federal Practice, p. 700: "Unlike compulsory counterclaims upon which separate judgments cannot be entered, a judgment may be entered on a permissive counterclaim before, after, or at the same time judgment is entered upon the original claim. This is permitted by Rule 54(b) because the permissive counterclaim is, as frequently pointed out, essentially an independent action. But 'In case a separate judgment is so entered, the court by order may stay its enforcement until the entering of a subsequent judgment or judgments and may prescribe such conditions as are necessary to secure the benefits thereof to the party in whose favor the judgment is entered.' [Rule 54(b)] This in no way affects the right of appeal. The judgment on the permissive counterclaim becomes appealable when entered, and the time for appeal begins to run from the entry of such judgment."

Moore's comment is supported by Rules 13(b) and 54(b). 13(b) defines a "permissive" counterclaim as one "not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim"; and 54(b) authorizes a separate judgment "when more than one claim for relief is presented in an action," upon a determination of the issues material to a claim and all counterclaims "arising out of the transaction or occurrence which is the subject matter of the claim." Thus the controlling phrase, "arising out of the transaction or occurrence," appears in both 13(b) and 54(b).

In Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 1087, 86 L.Ed. 1478, the Court, relying on 54(b), held appealable an order which, leaving two of plaintiff's claims pending, dismissed another "entirely distinct claim" arising "out of wholly separate and distinct transactions"; the Court said that if "a judgment has been entered which terminates the action with respect to such a claim, it is final for purposes of appeal under § 128 of the Judicial Code [28 U.S.C.A. § 225]." In the light of the

---

[4] Associated Industries, Inc., v. Ickes, 2 Cir., 134 F.2d 694, 699.

820

presence in both Rules of the same controlling phrase, the ruling in Reeves v. Beardall, supra, renders an order dismissing a "permissive" counterclaim a separate judgment, separately appealable.

Toomey v. Toomey, App.D.C., 149 F.2d 19, 20, so recognized. There the Court said: "Before the Rules were adopted the dismissal of any counterclaim, leaving the plaintiff's claim pending, did not have the effect of a final judgment. But the Rules 'indicate a "definite policy" * * * to permit the entry of separate judgments where the claims are "entirely distinct." * * * Such a separate judgment will frequently be a final judgment and appealable, though no disposition has been made of the other claims in the action.' Reeves v. Beardall, 316 U.S. 283, 285, 62 S.Ct. 1085, 86 L.Ed. 1478. The same may be said of claims *and counterclaims* which are entirely distinct."[5] Audi-Vision, Inc. v. RCA Mfg. Co., 2 Cir., 136 F.2d 621, 623, 147 A.L.R. 574,[6] and Markham v. Kasper, 7 Cir., 152 F.2d 270,[7] cited by my colleagues, are not in point, for each of these cases dealt with an obviously "compulsory" counterclaim.

The foregoing shows, I think, that my colleagues err in saying that a defense of patent-abuse is like a defense of payment; an order striking the latter defense would, of course, not be appealable separately, for it arises out of the same transaction as the plaintiff's claim. Mercoid makes it plain that patent-abuse is not similarly intertwined with the patent owner's claim.

4. The Mercoid case merely made explicit what already was implicit in Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165. The latter case was decided some seven months

---

[5] Emphasis as in original.

Since in the Toomey case the Court found that the dismissed counterclaims "are out of the same transaction as the plaintiff's claims," and were therefore "compulsory," the Court held the dismissal order not separately appealable.

[6] In the Audi Vision case the facts set forth in this court's opinion, were as follows: Plaintiff sued defendant for breach of contract. The contract contained a cancellation clause giving defendant a right to cancel on written notice, and defendant had given such notice. Anticipating a defense based on the cancellation clause, plaintiff in its complaint alleged that defendant had conspired with one of plaintiff's employees to deprive plaintiff of the benefit of the contract and that defendant had received all the benefits of the contract, notwithstanding its claimed cancellation. In its answer, defendant relied on the cancellation clause. Defendant also pleaded two counterclaims. In the first counterclaim, it relied on the same clause, alleging that the expenses incurred by plaintiff before the cancellation did not exceed $1500 and that therefore defendant was entitled to a refund (with interest) of the sum of $1740 initially paid plaintiff by defendant. Defendant's second counterclaim set up an account of goods delivered, showing $1454.61 still due. Plaintiff, in reply, challenged only the first counterclaim. On depositions taken by both sides, defendant moved for summary judgment dismissing the complaint and for judgment on the proceedings as to the second counterclaim. The district court granted the motion. In its opinion it said that defendant's liability for time and expense incurred before cancellation "is put in issue by the first counterclaim and the reply will be determined by a trial of that issue." The first counterclaim was then on the trial calendar awaiting trial. Defendant stipulated that plaintiff's claim to a refund of some $810 "shall be tried together with the [first] counterclaim." Plaintiff appealed, conceding the validity of the judgment for defendant on the second counterclaim.

This court dismissed the appeal as premature. Noting that the sole issue on the appeal was the district court's order dismissing plaintiff's claim, this court said: "In the present case it can hardly be questioned that the tests of finality have not been met. In fact, the claims [i. e. plaintiff's claim and defendant's first counterclaim] are so connected that they turn upon the proper meaning and application of a single sentence in a lengthy written contract—the cancellation clause quoted above. Clearly the counterclaim here involved was a compulsory one within the meaning of Rule 13(a), which had to be pleaded in this action if it was to be pressed at all. Having been pleaded, it takes its force entirely from this provision of the contract, which is a vital element of plaintiffs' case, first as a possible bar to recovery of the contract price, and second as a basis for the claim of an additional allowance for expenses. Complete adjudication of either claim or counterclaim therefore, cannot be had without continued resort to this sentence."

[7] See note 8a.

after Reeves v. Beardall, when the procedural question there involved must still have been vividly in the minds of the Supreme Court Justices. In the Jefferson Electric case, the plaintiff sued for royalties alleged to be due from defendant under a patent license. Defendant set up in a counterclaim that certain of the patent claims were invalid, referring to a provision of the license that gave plaintiff control of the prices at which defendant could sell the patented product; defendant argued that this provision was illegal. On plaintiff's motion, the district court dismissed the counterclaim. Defendant appealed and plaintiff moved (as does plaintiff here) to dismiss the appeal, urging that it was not from a final, but from an interlocutory order. The Circuit Court denied the motion, Jefferson Electric Co. v. Sola Electric Co., 7 Cir., 122 F.2d 124. Subsequently, when it heard the appeal on the merits, the Circuit Court held for the plaintiff on the ground that defendant, as licensee, was estopped to contest the patent's validity; 7 Cir., 125 F.2d 322. The Supreme Court, having granted certiorari (316 U.S. 652, 62 S.Ct. 946, 86 L.Ed. 1733), reversed and remanded. Citing Morton Salt Co. v. Suppiger, 314 U.S. 488, 489, 62 S.Ct. 402, 86 L.Ed. 363, it held that, because of the price control provision, the license was illegal, as a violation of the anti-trust laws, unless the patent was valid, and that therefore the defendant was not estopped to assert the patent's invalidity.[8]

The Supreme Court significantly did not reverse on the procedural ground—of lack of finality of the district court's order—but on the merits, although (as in the case here at bar) the district court's order had left the balance of the suit undisposed of and still to be tried.[9] My colleagues say that the Supreme Court was unaware of the unfinished state of the case existing when the district court's order was entered. That, I think, is a curious suggestion. For the second opinion of the Circuit Court on the

merits (7 Cir., 125 F.2d 322, at page 323), which the Supreme Court was reviewing, expressly said: "The appeal now before us is from a ruling of the District Court striking a counterclaim filed by the defendant. This counterclaim alleged invalidity of the patents under which appellant held the license. We have therefore overruled a petition filed by appellee to dismiss the appeal on the ground that the order was not an appealable one, but was merely an interlocutory one which neither granted, denied nor dissolved an injunction. Jefferson Electric Co. v. Sola Electric Co., 7 Cir., 122 F.2d 124." It should be noted that in the procedural part of the Mercoid opinion the Supreme Court cited the Jefferson Electric case. See Mercoid Corp. v. Mid-Continental Inv. Co., 320 U.S. 661, at page 670, 64 S.Ct. 268, 88 L.Ed. 376.

In Jefferson Electric, the price-fixing provision of the license appeared on the face of the plaintiff's complaint, so that, before Mercoid, it might conceivably have been argued that the counterclaim was "compulsory." Here, however, as in Mercoid, the facts on which defendants rely to show patent-abuse can nowhere be found in plaintiff's complaint and are quite distinct from the facts there set forth. Consequently, the Mercoid case and Reeves v. Beardall are even closer to this case than to Jefferson Electric Co. v. Sola Electric Co.

In Audi Vision, Inc. v. RCA Mfg. Co., 2 Cir., 136 F.2d 621, 623, 147 A.L.R. 574, the majority opinion criticized the Seventh Circuit for not dismissing the appeal in the Jefferson Electric case. That critical comment in the Audi Vision Case, however, was but dictum, since it was not at all a necessary basis of this court's decision, which dealt with an obviously "compulsory" counterclaim; moreover, that dictum, which overlooked the fact that the Supreme Court had entertained the Jefferson Electric appeal, was uttered six months before the Mercoid decision.[10]

---

[8] Cf. American Cutting Alloys, Inc., v. General Electric Co., 2 Cir., 135 F.2d 502; Nachman Spring-Filled Corp. v. Kay Mfg. Co., 2 Cir., 139 F.2d 781.

[9] See reference to the Jefferson Electric case in Altvater v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 87 L.Ed. 1450.

[10] My colleagues say that in Markham v. Kasper, 152 F.2d 270, the Seventh Circuit overruled its procedural decision in the Jefferson Electric case. I cannot agree. The Markham opinion

does not mention Jefferson Electric. I have examined the record and briefs in Markham. There, in a suit to quiet title, the district court's order struck out a defense, based on an alleged compromise, which the defendants had set up, substantially in duplicate, both in their answer and in a so-called counterclaim; moving to dismiss the appeal, plaintiff's lawyer in the Markham case in his brief distinguished Jefferson Electric on the ground that the district court's dismissal

**5.** My colleagues say that, even if the Third Defense be regarded as a "permissive" counterclaim, it must be dismissed for lack of federal jurisdiction. Surely not: The Mercoid case (320 U.S. at page 671, 64 S.Ct. 268, 88 L.Ed. 376) holds squarely that a federal court has jurisdiction of a counterclaim for patent-abuse since it is founded on a violation of the anti-trust laws. See 28 U.S.C.A. § 41(1) (c) and (23); 15 U.S.C.A. § 15; Barber Asphalt Corp. v. La Fera Grecco Co., 3 Cir., 116 F.2d 211, 216.

We have recently held that, in the case of a "permissive" counterclaim, venue requirements need not be satisfied. Lesnick v. Public Industrials Corp., 2 Cir., 144 F.2d 968; see also General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 53 S. Ct. 202, 77 L.Ed. 408.

**6.** My colleagues say, however, that the arguments advanced by defendants in support of their "Third Defense" show that it is but an indirect way of pleading the patent's invalidity.[11] (Thus my colleagues speak of "defendants' * * * contention made here that the patent was invalid.") I pass the question of the soundness of those decisions which held separately appealable an order dismissing a counterclaim which contests patent validity,[12] as that question is academic here. For my colleagues wholly misdescribe the position taken by defendants on the merits as to their "Third Defense."

Contrary to what my colleagues say, defendants did not in the district court or here assert, in support of their "Third Defense," that the mere inclusion in the patent of a method claim and a product claim constituted an illegal use of the patent or rendered it invalid. They have asserted that plaintiff, in its exploitation of the patent, discriminatorily granted licenses to third persons under the method claim in a manner which unlawfully extended its patent monopoly, a fact not apparent on the face of plaintiff's complaint or germane to the issues of patent invalidity or infringement. In their brief in this court in opposition to the motion to dismiss this appeal, defendants say: "These facts, which are not disputed, show how plaintiff and its licensees have improperly conducted their businesses, and how such practices interfere with the sale by defendants of their molding powder. On the other hand, proof on the questions of validity and infringement is entirely different." In his opinion, the district judge described as follows defendants' position: "The specific claim made by defendants is that plaintiff has misused its patent by extending the monopoly granted under the method claims to the control of products not patented by such claims. * * * Defendants' argument. * * * is that plaintiff and its licensees sell a product not within or protected by the monopoly granted by the method claims of the patent, and by the sale of the product, plaintiff granted to purchasers a royalty free license to carry out the patented process; neither plaintiff nor its licensees use the process; and the license rights granted under the method claims are contingent on the purchase from it of the product. Thus, it is said, plaintiff uses the method claims to extend the monopoly thereby granted to aid it in selling the product." And plaintiff well understood that, in their "Third Defense," defendants were not assailing the validity of the patent but its use by plaintiff, for plaintiff said in its brief in the district court: "In dealing with questions of 'misuse' of the patent

---

order in Markham did not deny defendants liberty to amend their pleadings and they had not elected to stand on them. Cf. Oppenheimer v. F. J. Young & Co., 2 Cir., 144 F.2d 387, 388. Moreover, the stricken defensive matter in Markham related directly to dealings between the parties to the suit; the "counterclaim," if it was such, was "compulsory".

[11] In so saying, my colleagues indulge in a discussion of the merits, going so far as to cite with apparent approval a district court decision in another case said to be in accord with the substantive ruling below. I shall not follow the example of my colleagues in discussing the merits, first, because this court has re-

cently held that such a course is improper on a motion to dismiss an appeal— Zalkind v. Scheinman, 2 Cir., 139 F.2d 895 at 904 and second, because it is unfair to the parties, neither side having as yet, in this court, filed a brief on the substantive issues.

[12] Dominion Electric Manufacturing Co. v. Edwin L. Wiegand Co., 6 Cir., 126 F. 2d 172; Trico Products Co. v. Anderson Co., 7 Cir., 147 F.2d 721; Leach v. Ross Heater & Mfg. Co., 2 Cir., 104 F.2d 88; Borchard, Declaratory Judgments (2d ed.) 816; cf. Altvater v. Freeman, 319 U.S. 359, at page 363, 63 S.Ct. 1115, 87 L.Ed. 1450.

monopoly it is necessary to consider the patent owner's method of doing business in relation to the scope of the monopoly granted by the patent. Such an inquiry is directed primarily to the interplay between the patent owner's course of business and his use of his patent rights, with a view to ascertaining whether the result of the interplay is the creation of a monopoly not granted by the patent."

If (as I think we should) we were to refuse to dismiss the appeal and were to deal with the merits, we might find that, on the facts, defendants' patent-abuse defense is legally unsound, in which event defendants would be remitted to their other defenses in the district court, including that of invalidity of the patent;[13] but we should not on the present motion, explore the question whether or not the facts disclose anti-trust violations.

7. Especially as defendants concluded their answer with a prayer for general relief (i. e., "for such other and further relief. * * *"), a prayer not found in the conventional answer, I think we must construe their "Third Defense" as a counterclaim asking a declaratory judgment and damages. Not only did the plaintiff and the district judge treat it as a demand for affirmative relief, in saying that it "failed to state a claim upon which relief can be granted," but the Rules, I think, also so require.

Thus Rule 54(c)—one of the vaunted achievements of the procedural reformers —wisely provides that a party is to receive the relief to which the facts he pleads entitle him, even if he has not demanded such relief.[14] My colleagues in the instant case cold-shoulder that Rule on the ground that defendants' contention that their claim of patent-abuse is a counterclaim, constituted "an after-thought not presented below." This is a singular suggestion, since this court (per Judge Clark) has gone extremely far in generously granting relief to a bewildered party on the basis of an "after-thought" which did not even occur to the party but which was conceived, on appeal, by this court itself. See Dioguardi v. Durning, 2 Cir., 139 F.2d 774, 775; and especially Truth Seeker Co. v. Durning, 2 Cir., 147 F.2d 54, 56, where we stressed the fact that plaintiff prayed for "such other and further relief, etc."[15] I think we should do at least as much for the defendants here.

My colleagues have here, for some unexplained reason, neglected Rule 8(f) which reads: "All pleadings shall be so construed as to do substantial justice," and Rule 8(c) which provides: "When a party has mistakenly designated * * * a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."[16] Surely here "justice so re-

---

[13] Should the question of validity arise, there would be need to consider the validity of a product claim; see Schering Corporation v. Gilbert, 2 Cir., 1946, 153 F.2d 428.

[14] Indeed, that Rule merely embodied a previously established doctrine; see Bemis Bag Co. v. United States, 289 U. S. 28, 34, 53 S.Ct. 454, 77 L.Ed. 1011, citing Clark on Code Pleading (1928) p. 184.

[15] In the Truth Seeker case, supra, the plaintiff sued the Collector of Customs asking merely the return of seized books; as the books were returned to plaintiff before trial, the district court dismissed the suit as moot without costs. Plaintiff appealed, seeking a decision for costs alone. If regard were had solely to plaintiff's theory of its case, it was bound to lose. But we held that the suit should be treated as one for return of the books or, in the alternative for damages—a thought never intimated by plaintiff in the district court or on appeal—and remanded for trial, thus ensuring plaintiff

at least nominal damages and the desired costs.

In Cook v. Martyn, 2 Atk. 3, 26 Eng. Rep. 399, Lord Hardwicke said, "Praying general relief is sufficient, tho' the plaintiff should not be more explicit in the prayer of the bill; and Mr. Robins, a very eminent counsel, used to say, general relief was the best prayer next to the Lord's Prayer." See Story, Equity Pleading (10 ed.) § 41, note 1; Watts v. Waddle, 6 Pet. 389, 402, 403, 8 L.Ed. 437; Wiggins Ferry Co. v. O. & M. R., 142 U.S. 396, 415, 12 S.Ct. 188, 35 L.Ed. 1055; Lockhart v. Leeds, 195 U.S. 427, 437, 25 S.Ct. 76, 49 L.Ed. 263; In re Eastern Palliament Corporation, 2 Cir., 67 F.2d 871, 874.

See also Cohen v. Randall, 2 Cir., 137 F.2d 441, 443; Kansas City, St. Louis & C. R. Co. v. Alton R. Co., 7 Cir., 124 F.2d 780, 781, 783; Clark, Code Pleading, 227, 234; Penhallow v. Doane, 3 Dall. 54, 86, 87, 1 L.Ed. 507; Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411, 412.

[16] "Pleadings are intended to serve as a

824

quires," if we are to heed what the Supreme Court said in Mercoid and related cases.

In the Mercoid case, the Supreme Court, after stating the policy forbidding judicial approval of a "scheme which involves a misuse of the patent privilege and a violation of the anti-trust laws," said (320 U.S. 670, 64 S.Ct. 273, 88 L.Ed. 376): "And the determination of that policy is not 'at the mercy' of the parties * * * nor dependent on the usual rules governing the settlement of private litigation."[17] That policy calls, I think, for this conclusion: When the issue of patent-abuse becomes apparent to the court, it should, if practicable, be decided at the outset of the suit, i. e., in advance of the trial of the other issues, and the court's decision on that threshold issue should be appealable at once, because, if the patentee is guilty of abusing the patent, he should not be allowed to compel the defendant to go to the trouble and expense of defending the suit for enforcement of the patent.[18] This is no light matter, for it is well known that the notoriously great cost of such a defense has often induced alleged infringers to accept licenses on onerous terms

rather than to engage in litigation, with the result that "spurious" patents, uncontested, substantially reduce competition.[19] That policy, expressed frequently in recent years by the Supreme Court,[20] which would prevent such injury to the public, my colleagues' decision frustrates.

Their decision stems, I think, from a confusion of two doctrines relating to appeals. The first doctrine—announced in cases like Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783; Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631; United States v. Florian, 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105, and Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, affirming Perkins v. Endicott Johnson Corp., 2 Cir., 128 F.2d 208—in order to "protect from delay the progress of the trial," bars an appeal from an order, made in the course of a suit not yet concluded, when the appeal will lead to "the piecemeal disposition of what for practical purposes is a single controversy," and will result in "separate reviews of the component elements in a unified cause." The second doctrine—announced in cases like Reeves v. Beardall, supra, and in many of our own decisions

means of arriving at fair and just settlements of controversies between the litigants. They should not raise barriers which prevent the achievement of that end. * * * Proper pleading is important, but its importance consists in its effectiveness * * * to accomplish the end of a just judgment." Maty v. Grasselli Co., 303 U.S. 197, 200, 201, 58 S.Ct. 507, 509, 82 L.Ed. 745.

[17] My colleagues seem to say that, since patent-abuse is so important that a court must consider it even if not pleaded, it logically follows that a counterclaim expressly pleading it is "compulsory," i. e., arises from the same occurrences or transactions which will determine whether the patent is valid or infringed. I cannot understand that logic. Proof of validity involves the prior art (or the like) and proof of infringement involves the defendants' conduct, but proof of patent-abuse concerns the plaintiff's conduct extrinsic to the patent, and usually, as here, plaintiff's dealings with third persons.

[18] See, e. g., Precision Co. v. Automotive Co., supra. In that case there was not trial of patent validity or infringement, but solely of the patentee's "inequitable conduct" (page 808 of 324 U. S., page 994 of 64 S.Ct.). While the misconduct did not relate to the anti-

trust laws, the Court (page 815 of 324 U.S., page 998 of 64 S.Ct.) cites as pertinent the Morton Salt case.

See also Jefferson Electric Co. v. Sola Electric Co., supra.

[19] Aero Spark Plug Co. v. B. G. Corporation, 2 Cir., 130 F.2d 290, 292; 59 Harv.L.Rev. (1945) 299, 300; Woodward, A Reconsideration of the Patent System as a Problem of Administrative Law, 55 Harv.L.Rev. (1942) 950, 969–970, 976.

Woodward (969-970) speaks of "the unusually heavy cost of patent litigation with its expert testimony and its disinterment of ancient industrial practices in many places." He says, "If a plaintiff is successful, the jury or the judge, aware of the cost of trial, estimates the damages liberally to cover this item * * * But if the defendant is successful and has no cross-claim, he must be satisfied with a dismissal of the action and a strictly limited bill of costs, usually a few hundred dollars or less."

[20] Morton Salt Co. v. Suppiger Co., 314 U.S. 488, 489, 62 S.Ct. 402, 86 L.Ed. 363; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367; Mercoid Corp. v. Mid-Continent Investment Co., supra; Sola Electric Co. v. Jefferson Electric Co., supra; Precision Co. v. Automotive Co., 324 U.S. 806, 65 S.Ct. 993.

such as, e. g., Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, Lewis v. Vendome Bags, 2 Cir., 108 F.2d 16, and Zalkind v. Scheinman, 2 Cir., 139 F.2d 895—again in order to discourage delays, permits an immediate appeal from an order dismissing one of two distinct claims "arising out of wholly separate and distinct transactions." Because they fail to observe that these two doctrines are designed, each in its own way, to yield expedition, my colleagues would, in effect, do away with the second by absorbing it in the first —all in the interest of alleged "uniform" procedure. It is the second of these doctrines which, I think, should govern here: Mercoid Corp. v. Mid-Continent Inv. Co., plus Jefferson Electric Co. v. Sola Electric Co. plus Reeves v. Beardall equals this case.

8. By referring several times to the dictum in Audi Vision, Inc. v. RCA Mfg. Co., supra, my colleagues seem to suggest (perhaps I am wrong) that the district court's dismissal order was interlocutory because the court did not use the talismanic term "judgment" or "final judgment." [21] Never until today has this court dismissed an appeal on that ground. In Sidis v. F-R Pub. Corp., 2 Cir., 113 F.2d 806, 138 A.L.R. 15, the district court's order merely dismissed two causes of action (leaving another to be tried) without stating that the order was a judgment or final; [22] this court refused to dismiss the appeal. Similarly, we refused to dismiss an appeal from a like order, again not denominated as final or a judgment,[23] in Musher Foundation v. Alba, 2 Cir., 127 F.2d 9; and so in Zalkind v. Scheinman, 2 Cir., 139 F.2d 895.[24]

Nor can I understand why the mere wording of the district court's order should determine whether it is appealable. For Rule 54(a) says: " 'Judgment' as used in these rules includes a decree and any or-

der from which an appeal lies." The order here was one which, to quote Rule 54(b), "upon a determination of the issues material to a particular claim," proceeded to the point of "disposing of such claim," its effect being to "terminate the action with respect to the claim so disposed of" so that the action would "proceed as to the remaining claims." It was therefore "a separate judgment," within Rule 54(b), although called an "order." True, Rule 54(b) adds, "In case a separate judgment is so entered, the court by order may stay its enforcement until the entering of a subsequent judgment or judgments. * * *"[25] But here the judge entered no stay order.[26]

---

[21] According to the district court clerk's docket, the order here was entered thus: "Order dismissing third defense contained in the answer."

[22] The district court clerk's docket shows this entry: "Order dismissing first and second causes of action."

[23] The docket shows this entry: "Order dismissing second cause of action."

[24] The docket entry reads: "Order striking portions of complaint."

[25] It is as yet undecided whether such a stay would be valid if it worked grave injustice and prevented prompt action, through appeal, as to an order otherwise appealable under Reeves v. Beardall, supra. It may well be doubted whether the Supreme Court meant to leave it to the trial court to determine, in its unregulated discretion, when an order should be "final" and appealable. Cf. Moore, loc. cit., 700.

If the amendment of Rule 54(b) proposed by the Advisory Committee in its Second Preliminary Draft of May 1945 is intended to confer such discretion on the trial judge, I, for one, think the amendment should be rejected.

