**WAIALUA AGR. CO., Limited, v. MANEJA et al.**

**MANEJA et al. v. WAIALUA AGR. CO., Limited.**

No. 11952.

United States Court of Appeals Ninth Circuit.

Nov. 10, 1949.

Rufus G. Poole, Charles Fahy, Milton C. Denbo, Philip Levy, Washington, D. C. (Pratt, Tavares & Cassidy, E. E. Moore, Jr., Honolulu, T. H., of counsel), for appellant Waialua Agr. Co.

Gladstein, Andersen, Resner & Sawyer, Richard Gladstein, Ewing Sibbett, San Francisco, Cal., for appellants Maneja and others.

Paul G. Borron, Jr., Plaquemine, Louisiana, Clarence J. Bourg, Washington, D. C., for American Sugar Cane League, as amicus curiae.

Donald Kirkpatrick, Chicago, Ill. (Paul E. Mathias, Harry Mcloy and George E. Merker, Jr., Chicago, Ill., of counsel), for American Farm Bureau Federation, as amicus curiae.

William S. Tyson, Sol., Bessie Margolin, Asst. Sol., William A. Lowe, Joseph M. Stone, Attorneys, Wage & Hour Division, U. S. Dept. of Labor, Washington, D. C., Kenneth C. Robertson, Regional Atty., San Francisco, Cal., for Wage & Hour Division, as amicus curiae.

Before STEPHENS and HEALY, Circuit Judges, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

This is a proceeding for a declaratory judgment, brought by Waialua Agricultural

Company, Limited, a corporation, against Ciraco Maneja and forty-seven other persons as defendants, individually and as representative of all other employees of plaintiff who are similarly situated. Included also were Local 145-7 of the International Longshoremen's and Warehousemen's Union, and Jack Hall, Regional Director, Territory of Hawaii, of the International Longshoremen's and Warehousemen's Union, individually and "as representative of all employees of the plaintiff who are named herein as defendants and of all other employees of the plaintiff who are similarly situated."

The complaint sets up a general description of the operations of the plaintiff corporation and alleges that a collective bargaining agreement was entered into between plaintiff and defendant International Longshoremen's and Warehousemen's Union, Local 145-7. The complaint likewise sets up a detailed statement of the duties of each employee in somewhat vague terms. The prayer of the complaint is that the employee defendants named be declared employed in agriculture and, if not, each be declared to be engaged in the processing of sugar cane into sugar, and that certain of the employee defendants, while engaged in certain tasks in connection with the plantation villages, be declared not engaged in commerce or in the production of goods for commerce. The answer contains admissions and denials and prays a declaration that none of the employees and defendants is engaged in agriculture, and, while it is admitted that certain employees were engaged from time to time during certain work weeks in first processing, further prays the Court declare that none of them was engaged in processing as an adjunct to agriculture and that the Court declare all the employee defendants were engaged in commerce or in the production of goods for commerce, and that all of the employees were subject to the overtime provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and prays for an accounting.

There was then filed an elaborate stipulation which set up that competent witnesses would testify as to voluminous facts relating to the general situation. Part I of the stipulation, in paragraphs 1 to 37, inclusive, contains the agreement that the witnesses would testify to the organization of Waialua as a corporation and a detailed and meticulously precise statement of its operations and activities throughout the vast setup. Part II of the stipulation, under paragraphs 38 to 86, inclusive, contains the agreement that the witnesses would testify to a general description (not related by particular hours, weeks, months or years or to any particular calendar period) of the work performed by the forty-eight different employee defendants of the Plantation. Part III of the stipulation is devoted to a limitation of the scope of the controversy and dispute and reads as follows:

"It is Hereby Further Stipulated by and between the parties hereto as follows:

"This controversy involved in the suit pursuant to which this stipulation is made and filed raises the question of whether the employees of the Plantation named as parties defendant herein and all other employees of the Plantation who are similarly situated are entitled to overtime compensation pursuant to the provisions of Section 7(a) of the Fair Labor Standards Act of 1938.

"No controversy exists with respect to the application of the minimum wage provisions of the Fair Labor Standards Act of 1938 to the defendant employees herein or any other employees of the Plantation similarly situated as the lowest paid employee of the Plantation is paid at an hourly rate in excess of that required by the Fair Labor Standards Act of 1938.

"The parties are agreed that any employee named herein as defendant who is held not to be subject to the Fair Labor Standards Act of 1938 or who is held to be exempt therefrom, and any other employee of the Plantation similarly situated, is subject to the maximum hour provisions of the Hawaii Wage and Hour Law and must be paid at a rate of not less than one and one-half (1½) times the regular rate at which he is employed for all hours in excess of forty-eight (48) hours per week."

This stipulation was entered September 12, 1947.

So far as the record of the trial on September 18, 19, 22 and 23, 1947, was concerned, it appears the testimony consisted altogether of one witness for the defendants, who was the Regional Director for the Union, and one witness for the plaintiff, who was the Assistant Manager of the Plantation.

After the trial, the defendants filed an amended answer and cross-complaint November 3, 1947, wherein it was set up that the plaintiff had failed and refused since January 19, 1946, to compensate the defendants in accordance with the provisions of the Act. This was made an issue by the plaintiff in a reply to the cross-complaint, in which reliance was placed in part upon Section 10 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 259. However, pursuant to a joint motion for separate trial upon the issue raised by this portion of the defendants' amended answer and cross-complaint and plaintiff's answer and cross-complaint, the Court, by order dated March 22, 1948, granted the motion. This issue was never tried and is not here presented. We disregard this matter, for the Trial Court expressly directed entry of judgment upon the case presented by the original complaint and original answer according to the provisions of Rule 54(b), Federal Rules of Civil Procedure, 28 U.S.C.A. The cause must stand or fall on these alone.

The Court thereupon took these "issues" under advisement, and thereafter filed an opinion entitled in the record, "Findings with Conclusions," which appears in Waialua Agricultural Company, Limited v. Ciraco Maneja et al., D.C., 77 F.Supp. 480. No findings of fact were made except as may appear therein. A judgment was then entered. This "judgment" does not relate to any of the individual defendants by name, but consists of a series of generalizations.

■ From this judgment, both sides appeal. Plaintiff attacks certain portions thereof. Defendants cross-appeal from other portions. Both appeals must be sustained. The "judgment" is a nullity. It gives no mandate or command as to the individual defendants named in the action. This document consists of a series of economic maxims which may or may not be applicable to the conditions and hours of work and overtime, if any, performed by Ciraco Maneja or Fumio Sunahara or Moses Fernandez or any other named individual defendant. It is true these expressions mention plaintiff and employees of plaintiff, as may be noted. But there is no declaration of the rights of these defendants or any one of them either positively or negatively. There is not the positiveness of command or declaration required by a judgment.[1] The reason a judgment must be positive and founded upon fact is that it is to stand as res judicata between the parties and privies.[2] Unless the facts found as a basis for the judgment are definite and positive, the ultimate characteristic of finality would be dissipated.

■ The second fatal defect in this pronouncement is that it lacks findings of fact. It is true, both parties refer to the "judgment" and opinion as though there were findings. But this mutual disregard of error which they had by one manner or another induced cannot avail to have this Court consider a judgment not founded in fact.[3] The Trial Court, in the opinion on file, indicated acceptance of the error superinduced by counsel and inherent in the inception of the case and in all the proceedings.

It is obvious no rule of conduct in respect to future activities and pay practices can be applied unless there are known and found

1. Watts v. Waddle, 6 Pet. 389, 399, 8 L.Ed. 437; Drybrough v. Ware, 6 Cir., 111 F.2d 548, 551.

2. "* * * an issue must have been decided before it can come within the scope of res judicata." Pierce v. Kunkel, 5 Cir., 151 F.2d 897, 898; Brown v. Fletcher, 6 Cir., 182 F. 963, 966–983; Hughes v. United States, 4 Wall. 232, 71 U.S. 232, 237, 18 L.Ed. 303; A. O. Smith Corporation v. Petroleum Iron Works, 6 Cir. 73 F.2d 531, 537, where it is said a prior determination must be based on the merits.

3. Kelley v. Everglades Drainage District, 319 U.S. 415, 421, 63 S.Ct. 1141, 87 L. Ed. 1485.

as facts what work week, what employees, what activities and how connected with interstate commerce, agricultural or housing, through the particular employee. Otherwise, the process is not judicial but administrative or legislative. See Trans-Pacific Airlines, Ltd. v. Hawaiian Airlines, Ltd., 9 Cir., 174 F.2d 63. The absence of findings as to the particular employees named as defendants leaves no pediment on which a judgment can stand.[4] The Trial Court cites Tennessee Coal, Iron & Railroad Co. et al. v. Muscoda Local No. 123, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014, and Jewell Ridge Coal Corporation v. Local 6167, 325 U.S. 161, 65 S. Ct. 1063, 89 L.Ed. 1534, as instances in which declaratory proceedings were carried to conclusion in interpretation of the Fair Labor Standards Act. But in each of these cases, detailed and specific findings were entered.[5]

The difficulties caused by lack of findings, precise and definite, may be indicated. First, although the parties stipulate that the gist of the controversy is whether the individual defendants are entitled to overtime compensation, there is no evidence, finding of fact, conclusion of law or declaration of the judgment that any one of the defendants named or any one similarly situated ever worked overtime for any period, definite or indefinite, and that any of them are asked or may be com-

pelled to work overtime in the future or that either the employer or the employee contemplates such overtime work.

The result of lack of this essential finding is to render the cause moot in this Court, for it leaves the critical issue of the case here without allegation, proof, finding of fact or positive judgment. In the absence of such structure, the proceeding is coram non judice. There was not shown in the findings and judgment a "case or controversy" within the meaning of the Constitution.[6] If there were no basis for such a finding in the petition or evidence, the proceeding then must have been dismissed. For, failing this, there was no jurisdiction.[7] However, we need not determine whether the defect was fatal, since the cause must be remanded on account of the lack of essential findings.

The ultimate problem before the Court is the fitting of the provisions of a statute of national application to the activities of a particular employee in this giant agricultural operation. There are several phases of the fact picture on which the provisions of the Act might be pertinent:

(1) Farming operations, such as harvesting to which Section 13(a) (6),[8] excluding from the operation of both wages and hours provisions of the Act "any employee employed" in agriculture, as therein defined by Section 3(f),[9] might be applicable.

---

4. Findings must be "sufficiently comprehensive and pertinent to the issues in the case so as to provide a basis for purposes of decision." Shapiro v. Rubens, 7 Cir., 166 F.2d 659, 665; Schilling v. Schwitzer-Cummins Co., 79 U.S.App. D.C. 20, 142 F.2d 82, 84.

5. See as to Jewell Ridge Coal Corporation v. Local 6167, D.C., 53 F.Supp. 935, 937; Id., 4 Cir., 145 F.2d 10; as to Tennessee Coal, Iron & Railroad Co. et al. v. Muscoda Local No. 123, D.C., 40 F.Supp. 4, 11; Id., 5 Cir., 135 F.2d 320, 322; Id., 5 Cir., 137 F.2d 176, 180; Id., 321 U.S. 590, 603, 64 S.Ct. 698, 88 L.Ed., 949, 152 A.L.R. 1014 (directions for findings).

6. Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 460–462, 65 S.Ct. 1384, 89 L.Ed. 1725. See Altvater

v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 87 L.Ed. 1450; United States v. West Virginia, 295 U.S. 463, 475, 55 S.Ct. 789, 79 L.Ed. 1546; Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000.

7. Colegrove v. Green, 328 U.S. 549, 552, 66 S.Ct. 1198, 90 L.Ed. 1432; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 80 L.Ed. 688. Cf. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300, 63 S.Ct. 1070, 87 L.Ed. 1407; Nashville, Chattanooga & St. Louis Railway Co. v. Wallace, 288 U.S. 249, 262, 53 S.Ct. 345, 77, L.Ed. 730, 87 A.L.R. 1191.

8. 29 U.S.C.A. § 213(a) (6).

9. 29 U.S.C.A. § 203(f).

(2) Prevention of the spoilage of cane and preparation for delivery to market by processing to the point where raw (not refined) sugar is obtained, which might fall as work performed by a farmer on a farm in harvesting and preparing for market under Section 3(f) [9] or might be excluded by Section 7(c) [10] as part of the processing of raw sugar or might be considered in part as the production of goods for commerce.

(3) Construction, conservation, repair and reconditioning of plant, irrigation systems, tools, agricultural machines, processing plants, instruments of transportation, which might fall under Section 13(a) (6), Section 7(c) or Section 3(j).[11]

(4) Construction, management, repair, reconditioning and operation of villages, which may not be included under the Act at all, and may, on the other hand, fall in part or in whole under Section 13(a) (6), Section 7(c) or Section 3(j).

Inasmuch as it is apparent that the work of an employee defendant might fall under any one of these various and highly diverse classifications or might in a particular week comprise a combination of duties under two or all of these classes, the necessity for specific findings becomes more and more clear. Such findings must be in terms of the hours of each work week and the nature of the duty performed in order to fix the kaleidoscopic changes which vary the picture as often as the duties of a single employee shift under the light of the statutory provisions.

■ In certain fields, where the Trial Court drew general conclusions, we are unable to speak without such specific and positive findings. But it is not the function of an Appellate Court to make findings on its own account. Besides, other difficulties intervene. The stipulation is in the form of testimony and would require the judgment of the Trial Court to weigh the whole and select proper portions for incorporation into findings. It is true the attorneys requested more specific findings as to employees. The able and conscientious Trial Judge was unable to make such findings owing to the posture of the case and the state of the record—a matter which will be hereafter discussed. This is pointed out in the opinion of the lower court on file herein.

It is a necessity, in view of the fact that a purported declaration has been entered below, that it be specifically indicated what findings would be requisite to support a judgment. Such analysis follows:

■ The statement that "practically every person employed in the work of a sugar plantation in Hawaii is employed in 'commerce' as it is defined and dealt with in the Fair Labor Standards Act," is a conclusion of law and not an applicable finding of fact.[12] The only method of making binding findings upon this subject is to enumerate the exact duties of a particular employee for a specified period of time and apply the pertinent statutory provisions. The imperative need for detailed facts upon which to found positive declarations is found in the nature and purpose of the act and the exclusions. The humanitarian purpose of the statute to insure to the industrial workers a fair wage for a reasonable work week was here crystallized, as the learned District Judge pointed out.

■ But the raising and harvesting of sugar were specifically given consideration by Congress on account of the immense importance to the economy of this country as a whole. The text of the Act itself, the debates over the meaning of provisions, and especially the broad phrasing of the exclusions, indicates the intention that construction should be evenly balanced and not technical. The text reflects the feeling that, in troublesome times, the need for

---

10. 29 U.S.C.A. § 207(c).

11. 29 U.S.C.A. § 203(j).

12. Cf. Interstate Circuit, Inc. v. United States, 304 U.S. 55, 56, 58 S.Ct. 768, 769, 82 L.Ed. 1146. "The statements in the decree that in making the restrictive agreements the parties had engaged in an illegal conspiracy were but ultimate conclusions and did not dispense with the necessity of properly formulating the underlying findings of fact."

sugar may momentarily become vital. As to sugar, the all-year processing exclusion, in addition to the broad agricultural exclusion, indicates strongly congressional intent. Not only was it the desire to exempt processing as a part of the harvesting done by a farmer or on a farm, but also processing done by a third party. These provisions are not alternative or mutually exclusive, and should be liberally construed for the reasons given by this Court in McComb v. Hunt Foods, Inc., 9 Cir., 167 F.2d 905, 908. It must be remembered that the construction given to this Act by the Court as to Hawaii, although not conclusive, will be generally applied to wheat farms and sugar plantations in continental United States.

Agriculture and farming, as those terms are generally understood, are not interstate or foreign commerce. As has hitherto been pointed out by this Court in the case cited just above, these provisions relating to farming are exclusions, not technical exemptions to be construed in accordance with over-refined rules of pleading, but broadly and liberally as is demanded by the nature of the subject and the unquestionable intent of Congress. This factor is directly applicable to the individual employee because the Act specially provides that the statute shall not apply to any employee who is engaged in agriculture.

As a result of the basic inconsistency which has been pointed out before, vague phrases in the opinion of the District Court are particularly inept when relating to the activities of the employees concerned with the villages. It is probable it might be concluded, if a detailed finding of the work done by a particular employee in a particular week were made, that he had no connection with commerce or the production of goods for commerce, or it might be found that he was engaged in agriculture or processing of sugar cane. The wealth of detail which would have been testified to by competent witnesses relating to the villages on the company property is such that it is extremely difficult to discover on what basis the Court believed many of these activities had any relation to interstate commerce.

Under the general conclusion that all employees of Waialua are engaged in commerce, the Trial Court necessarily holds that the carpenter who initially constructed a house for an army officer on company property and the beauty operator who works in a hotel for transients and the girl who takes tickets at the moving picture house are so engaged. If this be true, it would be stretching the bow very far. But we do not know that such employments exist, although "other employees similarly situated" might be construed to include such type work. But, in excepting to this conclusion contained in the opinion of the Trial Court, attorneys for appellant desire all employees blanketed under the agricultural exclusion, which, of course, would be just as improper. It is doubtful that many of these employees could be included in the agricultural exclusion. There may, on the other hand, be certain portions of such employment which would relate to retail or independent establishments under the statute, but the lack of findings hampers this Court to such an extent that we cannot deal with the situation. Scattered through the stipulation as to almost every one of the employees before the Court are statements to the effect that "he cuts firewood for use as fuel by plantation employees living in plantation villages." He "is engaged exclusively in cutting firewood for use as fuel by plantation employees living in the plantation villages, repairing houses and pruning shade trees, etc." And again, "he may spend a day or two grading around * * * plantation housing areas preparatory to the construction of a new building or a house." Here a broad brush has been used, and there is no shading. If it were stated for what plantation employee the firewood was cut, then there might be possibility of a definite conclusion, but we would have to know whether the firewood were a perquisite or whether it were paid in part as wages and whether it were a gift, dependent upon the relationship of the employee to the company.

The determination of how many angels could stand on the point of a needle would seem to have a firm foundation in fact,

as compared with a determination of what relation the furnishing of firewood gratuitously to the village streetcleaner or tree trimmer around independent establishments of Waialua village has either to interstate commerce or to agriculture. But again, we do not know the facts. The finding in this regard might be based upon the evidence set up in the stipulation that some competent witness would testify to these facts:

"Many non-plantation and independently owned and operated stores, shops, restaurants, service establishments and public schools and churches made their appearance on the plantation itself in and around the village of Waialua to serve the needs of plantation employees and their families living in the area."

"The village of Haleiwa is a small business and residential community which is made up of privately owned residences and typical small retail and service establishments. Haleiwa caters to plantation employees and to surrounding community residents, who include persons working at other locations on the island of Oahu and residents of numerous beach houses and Army and Navy personnel using beach recreational facilities."

"Employees of the plantation as heretofore are continuing to render services and perform maintenance work on plantation houses and village areas."

The difficulties of proceeding without a firm basis of fact are highlighted by a consideration of the transportation. The activities of employees engaged in transportation are various, according to crystallized testimony. Some work of this type might be classified as wholly agricultural, such as transportation to market, within the statutory exclusion. Some might be viewed as processing, if that be not also agricultural, and a portion might be considered as unrelated to commerce or production of goods for commerce. It is probable that no feasible distinction can be drawn under the language of the statute between carriage by motor truck, railroad locomotives or other modern devices, and

by water buffalo with carts, as the statutory cleavages are on other lines. For the same reason, distinctions cannot be drawn on account of size. If a particular operation in transportation were done, according to the facts, by a farmer in harvesting, it would not fall under the statutory provisions even if the farmer were an agricultural giant such as Waialua. If the particular hauling is not done by a farmer or "on a farm" "as an incident to or in conjunction with" farming operations, such as harvesting, then the subsidiary questions arise as to whether the haulage is connected with excluded processing or with the production of goods for commerce at all. The pushing of loaded sugar and molasses cars from plant to siding of a carrier might be delivery to a carrier for transportation to market or a part of a processing operation, according to the surrounding circumstances, such as, for instance, the time at which the raw sugar is sold. The classification of transportation of men over roads outside the Plantation, the carriage of supplies for the farm or for individual storekeepers or for construction or for the electric plant depends on facts in minute detail. The placing of certain activities in transportation or in the category of "preparation for market" or "harvesting" on the one hand, or on the other in the category of "processing" of sugar cane into raw sugar, demands meticulous consideration.

The gathering of the cane and transporting it on the farm and reducing it to a product which can be handled without loss probably bears some analogies to other farming. In the old days of threshing operations in wheat with stationary threshers, the header cut the grain and it was carried by elevators into header boxes and by the header boxes carried to stacks. Thereafter the stationary thresher would move from one stack to the other and thresh out the grain and place it in sacks. If the farmer owned his own outfit and farmed his own land, it was all a part of the harvesting operation up to the point where the grain was in the bag. The facts, if found as regards sugar cane,

would settle the question as to whether the operations were outlined on stipulation as part of "harvesting."

If it be that, to prevent deterioration, there must be direct and immediate delivery from the harvest field to the cane-cleaning plant for cleaning preparatory to crushing, the hauling might be placed upon the same basis as the other processes which are necessary to prepare agricultural products to prevent deterioration. Again, the threshing operation with wheat, which is only a first step, may furnish a guide. Everyone realizes that, in order to be used, the wheat must necessarily be elsewhere milled into flour. Likewise, everyone realizes that, before the sugar is usable, it must be refined at another factory. The process of harvesting cane might end only with the bagging of the raw sugar, as the harvesting of wheat ends with the bagging of the grain. The disposal of the molasses, which is an incidental product, may be similar to the disposal of the straw and chaff, which is an incidental product in the wheat harvesting process. The facts themselves, if found as to a particular employee, dictate the application of the statute.

The stipulated evidence would seem to indicate that sugar cane is highly perishable and starts to deteriorate immediately after cutting. The same source would indicate that, to avoid serious losses, it must be processed into sugar, syrup or molasses within a few hours after it has been severed from the ground, and that, for this reason and because of the great weight and bulkiness of cane as compared with raw sugar, it must be processed within a few miles of where it is grown. It was agreed also that sugar cane never moves into interstate commerce in its natural state. But these are not solidified into findings so that it can be determined whether the hauling of the cane is harvesting, an activity performed on a farm in preparing an agricultural commodity for delivery to market or to storage, or an essential processing operation without which this farm product would have been lost or wasted.

The question as to the classification of workers who have to do with irrigation has recently been dealt with by the Supreme Court of the United States in Farmers Reservoir & Irrigation Co. v. McComb, Adm., 337 U.S. 755, 69 S.Ct. 1274. There it was held that an irrigation system common to a great many farms which hired its own employees was under the provisions of the Fair Labor Standards Act and was not covered under the agricultural exception. But the Court there pointed out that in the particular case there was not an operation by a farmer or on a farm, but that it was a communal enterprise by several farms. The explanation for this case is the same as that of Calaf v. Gonzalez, 1 Cir., 127 F.2d 934; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11; Gonzalez v. Bowie, 1 Cir., 123 F.2d 387, and the opinion of this Court in North Whittier Heights Citrus Ass'n v. National Labor Relations Board, 9 Cir., 109 F.2d 76. While it is probable Farmers Reservoir opinion only highlights the exclusion of the worker who deals exclusively with irrigation on the farm of this single owner as one engaged in agriculture, the implications as to those who construct the canals and those who may work off the farm, if there be any, must be settled by reference to the actual facts.

It is impossible for this Court to rule in this state of the record and without findings as to specific employees, specific work, specific time and exact results on timekeepers, warehousemen, material clerks, laborers who load stones on conveyances in the fields and machinists at the mill, activities in construction and maintenance, employment, part or full time, in operation, maintenance and repair of equipment, burning of bagasse, generation and distribution of electricity, the cleaning and repairing of a mill or machinery and equipment, the hauling of supplies and equipment by motor truck and maintenance and repair thereof the shoeing of horses and mules, maintenance and repair of buildings and grounds, and clerical employees. We believe many of these activities are shown by the testimony in-

dicated in the stipulation to be excepted from the statute. But we cannot make findings of fact.[13]

Since the cause must be remanded then for exact findings, it will be pertinent for the District Court to determine whether there is a justiciable controversy, as above noticed, and also whether in any event a declaratory proceeding should be entertained. For the difficulty in crystallizing findings of fact did not arise from ineptness or recalcitrance of the learned Trial Judge, but from the course of the proceedings and the attitude of the real litigants.

The form of proceeding chosen by plaintiff was a declaratory judgment. This was unfortunate since generalities rather than concrete and exact definition of facts result from such a proceeding. Furthermore, since the proceeding is nebulous in form, the uncritical user may believe that any type relief can be obtained therein. But on top of the declaratory proceeding was superimposed the joinder of and prayer for relief against all similarly situated. A blanket declaration of exclusion of all employees was sought. Then Waialua seemed to consider itself as representative of all its feudally organized brethren. Joined as defendants were the Union and its Regional Director, although no relief is sought against either. These latter appeared to have slight, if any, interest in the particular individual defendants, for they had in contemplation much broader issues. All the defendants, including these individual employees, appeared by the same counsel. But the moving actors were the Union and the director on one side and the "representative" Plantation on the other. The answer prayed likewise for a declaration in broad terms.

The record shows that none of the individual employees was called upon to testify in the case. No one of them was called to establish his work record in any particular week. Nor was any of them ever called to establish that he worked overtime. So far as the record indicates, no employee of the Plantation was ever in Court. Perhaps these minor characters could not be trusted in this litigation of the demigods. In any event, the major players seemed to have treated them as pawns.

The individual defendants and the duties of each are described in the stipulation, but with such broad strokes that individual characterization was obliterated and a composite portrait of some characteristics of an assumed worker achieved. The basis of findings of fact was here destroyed.

The record in the case consisted of the agreements of the stipulation, in which, undoubtedly, the Plantation and its operations and activities are described in great detail, albeit it may be said with a very kind voice. There were injected into the record pamphlets entitled "Labor in the Territory of Hawaii" and "The Economy of Hawaii, 1947." The Regional Director of the Union testified he could not personally swear as to the operations at the installation of plaintiff, but that he had intimate knowledge of the condition on other plantations on the island and the character of the work done there. Notwithstanding he testified using the stipulation as a guide as to how various general functions of employees were performed throughout the plantations on the island. An example of his method is contained in the following expression: "I must confess, your Honor, that this legal argument leaves me a little cold. I am trying to indicate in these job descriptions where they are incomplete and where they are misleading. And in the case of No. 42, Augustine Lorenzo, the description indicates that all of the water is used exclusively for irrigation purposes. Employees similarly situated on many of the plantations are handling water that is also used for mill purposes." It is true the attorney for Waialua objected to this particular testimony, but he had already set the stage by the course of the proceeding up to that time. The net result was an attempt to lay foundations for an essay upon the economy of Hawaii or on labor conditions in Oahu.

13. Kelley v. Everglades Drainage District, supra: Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221.

While the semi-feudal organization of industry and agriculture upon the plantations of this semi-dependent archipelago present a national problem, there should be no attempt to settle them on the basis of an agreed record between a single plantation and a labor organization.[14] Especially is this true where the rights of the individuals involved are utterly disregarded, notwithstanding the express language of the statute. The danger is that, by agreeing as to this course of conduct, a precedent might be established for the settlement of problems on the mainland which does not have the peculiar problems of Hawaii.

The intention of the real litigants to make this a case upon which a general advisory opinion would be written appears in the discussions over the admissibility of certain testimony. The disregard of the employees themselves, who are the individuals whose interests are affected, is undisguised. The attorney for the Union says: "It isn't our purpose in this declaratory relief case to just get a determination for Waialua. That wouldn't solve anything. You'd have 30 odd other plantations that would still not have any authoritative statement as to where coverage lies and where it ends. The purpose of this proceeding was to get, first of all, a plantation which was sufficiently and substantially typical and representative, so that the decision in that case would apply to the rest of the industry. And that's why Waialua was picked out."

It will be noted then that this expression indicates that this action was brought by agreement between Waialua and the Union. The attempt was to dispose of it upon terms of agreement between these two and thereby compromise the rights and interests of hundreds of employees who would not themselves be permitted even to compromise their own coverage.[15]

The Trial Court should then consider as to whether there is any real adverse interest between the parties who are actually conducting the litigation.[16] For in the absence of real controversy between the actual parties, the stipulation, which practically dictates the judgment, renders the case moot.[17] The Court should consider that there is no power to render opinions merely advisory [18] or to decide moot questions [19] or to set precedent for future litigation.[20] It is of great importance that the rights of third parties might be prejudiced by a declaratory judgment in this case even if founded upon proper findings.[21]

Refusal to entertain a petition for declaratory judgment is peculiarly within the discretion of the Trial Court.[22] If a "concrete set of facts" would be supplied to which the statute could be fitted

---

14. The situation has not been aided on appeal so far as clarity is concerned by the intervention amici curiae of the Administrator of the Department of Labor, who takes a Janus-like position, and the American Farm Bureau Federation of the United States of America and American Sugar Cane League of the United States of America, Inc., since none of them discuss the matter on the record or with relation to the particular defendant employees.

15. D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 116, 66 S.Ct. 925, 90 L.Ed. 1114, 167 A.L.R. 208.

16. United States, et al. v. Johnson, 319 U.S. 302, 304, 63 S.Ct. 1075, 87 L.Ed. 1413; Coffman v. Breeze Corporations, Inc., et al., 323 U.S. 316, 324–325, 65 S.Ct. 298, 89 L.Ed. 264.

17. Paradise Land & Livestock Co. v. Federal Land Bank of Berkeley, 10 Cir.,

147 F.2d 594; Buck's Stove & Range Company v. American Federation of Labor, 219 U.S. 584, 31 S.Ct. 472, 55 L.Ed. 345; Dakota County v. Glidden, 113 U.S. 222, 223–224, 5 S.Ct. 428, 28 L.Ed. 981.

18. St. Pierre v. United States, 319 U.S. 41, 42, 63 S.Ct. 910, 87 L.Ed. 1199.

19. United States and Interstate Commerce Commission v. Alaska Steamship Co., 253 U.S. 113, 115, 40 S.Ct. 448, 64 L.Ed. 808.

20. United States v. Hamburg-Amerikanische Packert Fahrt-Actien Gesellschaft, 239 U.S. 466, 475–477, 36 S.Ct. 212, 60 L.Ed. 387.

21. Lord v. Veazie, 8 How. 251, 255–256, 12 L.Ed. 1067. See also Meeker v. Straat, 38 Mo.App. 239, 243; Ward v. Alsup, 100 Tenn. 619, 46 S.W. 573.

22. Franklin Life Ins. Co. v. Johnson, 10 Cir., 157 F.2d 653, 656.

and thereby "an adequate and effective judgment" rendered,[23] it would be proper to proceed. For such a judgment would satisfy the necessity of firmly founded fact findings [24] and the elements requisite for a plea of res judicata [25] in subsequent litigation. It would remove the suspicion of an advisory opinion [26] dealing with "assumed potential invasions" of rights [27] and an academic pronouncement [28] instead of a definitive judgment. However, we leave this as a suggestion only and not as a direction.

Unfortunate as the consequences of remand may seem, it would be still more unfortunate for this Court to write a treatise without fact foundation. Other courts would then be required to guess similarly without foundation. The cause is therefore remanded for further proceedings in accordance with this opinion, either for dismissal for the reason that no ground has been shown for entry of a declaratory judgment or to permit the entry of detailed findings as to each employee defendant, based upon an adequate record. The judgment herein, which is in the form of a manifesto or at most of a legislative enactment or an administrative rule, is set aside.

Remanded for further proceedings.

23. Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 468, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725.

24. Creamery Package Mfg. Co. v. Cherry-Burrell Corporation, 3 Cir., 115 F.2d 980, 983; certiorari denied 312 U.S. 709, 61 S.Ct. 828, 85 L.Ed. 1141; Interstate Circuit, Inc. v. United States, 304 U.S. 55, 56, 58 S.Ct. 768, 82 L.Ed. 1146.

25. Pierce v. Kunkel, 5 Cir., 151 F.2d 897, 898.

26. This caution is heavily reinforced by the language and action of this Court in Imperial Irrigation District v. Nevada-California Electric Corporation, 9 Cir., 111 F.2d 319, 321, 322. To like effect, Johnson v. Interstate Transit Lines, 10 Cir., 163 F.2d 125, 130, 172 A.L.R. 1242.

27. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 324, 56 S.Ct. 466, 473, 80 L.Ed. 688; Arizona v. California, 283 U.S. 423, 462, 51 S.Ct. 522, 75 L.Ed. 1154.

28. Johnson v. Interstate Transit Lines, 10 Cir., 163 F.2d 125, 130, 172 A.L.R. 1242.