## UNITED STATES v. PLYMALE
### Civ. No. 526.

United States District Court
S. D. W. Va.  Huntington Division.
Jan. 7, 1950.

Howard J. Heilman, Cleveland, Ohio (Paul Marshall, Cleveland, Ohio, on the brief), for plaintiff.

Okey P. Keadle, Huntington, W. Va., for defendant.

**WATKINS, District Judge.**

This action arises out of alleged overcharges made by defendant in the renting of housing accommodations located in Huntington, W. Va. Two apartments, both located on the second floor of defendant's building, are involved. Plaintiff asks for an injunction to restrain defendant from receiving further rent in excess of the maximum permitted under the Controlled Housing Rent Regulation, for restitution to the tenants and treble damages under the provisions of Section 205(a) of the Price Control Act, 50 U.S.C.A.Appendix, § 925(a) and Section 206(b) of the Act of 1947, 50 U.S.C.A.Appendix, § 1896(b).

### Findings of Fact.

(1) On March 1, 1942 (the rental freeze date) these apartments were each rented for $40 per month, and, as required by the rent regulations, defendant registered them in the latter part of 1942 at that rental, thereby fixing the maximum legal rent for each apartment at $40 per month. Subsequent to filing registrations under this Housing Regulation, and renting the two apartments at the maximum rental of $40 each, he decided that this was not enough rent, and permitted the apartments to remain idle for a few months. On May 17, 1948, he filed registrations under the Rooming House Regulation for both apartments, claiming that he would thereafter carry on the business of a rooming house, renting rooms in the usual rooming house manner instead of renting the accommodations as apartments. Thereby he would be able to collect more rent. The Rent Director

orally approved of the new rental, providing the accommodations were actually rented as rooms instead of apartments. Defendant was advised by the Rent Director that in order to avail himself of rooming house rents under the Rooming House Regulation, he would actually have to rent the premises as rooms, and that if he rented them as apartments, the apartment house rent, under the Housing Regulation, would control. No order was ever entered upon the new registration.

(2) The defendant contends (1) that he thereafter rented the premises as rooms rather than apartments, and (2) that the new registration filed by him permitted him to collect rental as a rooming house, even though he did rent the premises as apartments until some positive action by way of revoking such rooming house registrations was taken by the office of the Housing Expediter. I find no merit in either of these contentions.

(3) The premises consisted of two well defined apartments, each apartment containing a reception room, a kitchen, bath and two bedrooms. The usual rooming house services, such as maid services, linens, etc., were not furnished by the defendant. The tenants advertised in a newspaper for rental of apartments. Defendant answered those advertisements, and rented the apartments. He placed small paper cards either on or over the various doors showing the number of the various rooms and the ceiling rent for each room.

(4) Defendant rented the apartment occupied by H. W. Denny during the period from January 3, 1949 to August 3, 1949, and received from Denny as rent the sum of $50 per month.

(5) Defendant rented the apartment occupied by Mrs. Katie R. Peters, Gladys Byrd and Loretta Peters from June 5, 1948 to June 25, 1949, and received from them as rent the sum of $15 per week.

(6) The premises above described are located in the Huntington, W. Va. Defense Rental Area and the rents therefor were subject to control under the Housing and Rent Act of 1947 and the Regulations issued pursuant thereto.

(7) The maximum rent for each of these apartments was determined and set at the rate of $40 per month by virtue of rent registration statements filed by defendant which stated that the rent on the maximum rent date was $40 per month for the premises which he described as "202 Fifth Avenue, Huntington, West Virginia, Apartment No. 3" and "202 Fifth Avenue, Hunting, West Virginia, Apartment No. 4". This rental of $40 per month for each apartment was set by regulation under the Emergency Price Control Act of 1942, as amended, as the maximum rent until changed by order of the Rent Director. No change was made in the buildings, the furniture,. or the services offered. No order was entered changing the. rental. The maximum rent of $40 per month was in effect on June 30, 1947. Under Section 4 of the Housing Regulation issued under authority of the Housing and Rent Act of 1947, the maximum rent in effect on June 30, 1947 continued in effect until changed by order of the rent director.

(8) Defendant has overcharged H. W. Denny during the rental period mentioned above the sum of $70.

(9) Defendant has overcharged tenants Mrs. Katie R. Peters, Gladys Byrd and Loretta Peters during the period from June 5, 1948 to June 25, 1949 the sum of $316.66.

(10) Such overcharges were not made wilfully such as to permit treble damages.

### Conclusions of Law.

1. Plaintiff is entitled to the injunctive relief asked against defendant in its complaint.

2. The defendant must make restitution to the tenants of the rental overcharges mentioned above.

3. Plaintiff is not entitled to recover treble damages.

4. Plaintiff is entitled to recover its costs against defendant.

5. Whether the Housing Regulation or the Rooming House Regulation applies to a specific rental. depends primarily upon the nature of the rental, whether the housing accommodation is actually being rented as a rooming house or as an apartment. The Housing Regulation by its terms applies to all housing accommodations except certain ones which are specified therein. Section 1(b) (iii) exempts accommodations actually rented as "Rooms or other housing accommodations subject to the Rent Regulation for Controlled Rooms in Rooming Houses, and other Establishments". Under Section 1 of the Rooming House Regulation a room is defined as "a room or group of rooms, *not constituting an apartment,* rented or offered for rent as a housing accommodations unit in a rooming house, hotel, or other establishment". Rooming house is defined as "in addition to its customary usage, a building or portion of a building other than a hotel or motor court in which a furnished room or rooms *not constituting an apartment* are rented on a short term basis of daily, weekly or monthly occupancy to more than two paying tenants, not members of the landlord's immediate family". It will be observed that in both of the definitions of a room and a rooming house the nature of the renting determines whether or not the Rooming House Regulation applies. If the accommodation is rented as an apartment, the Rooming House Regulation does not apply and the accommodation is, therefore, subject to the Housing Regulation. The Regulations do not require the Rent Director to take any positive action rejecting a Rooming House Regulation in order to put the Housing Regulation into effect. If the accommodation is actually rented as an apartment, the maximum rent is determined under the Housing Regulation and registrations thereunder.

### Discussion.

The statements made by Judge Dobie in the recent case of Woods, Housing Expediter, v. Macken, 4 Cir., 178 F.2d 610, 512, are applicable here. There, an apartment was registered and rented for $45 per month. During 1946, defendant altered the premises by changing the same from one unit to two units, thereafter registering and renting the two units at $25 and $35 respectively, or a total rent of

$60. Later the landlord rented the two units to a single tenant at the rate of $60 per month, or the aggregate amount paid by the two previous tenants. The Housing Expediter, claiming that under the Controlled Housing Rent Regulation, the maximum rent for the whole floor was $45 per month, brought suit for an injunction and for restitution of rental payments in excess of the rent in existence on the freeze date. Defendant denied violation, and, as here, claimed that the subsequent registration statements superseded the original registration filed in 1942, and that the maximum rental established on the freeze date period was no longer controlling. Judge Dobie said:

"Section 4 of the Controlled Housing Rent Regulations (10 F.R. 1358) states that 'maximum rents (unless and until changed by the Administrator * * *) shall be * * * the maximum rent which was in effect on June 30, 1947, as established under the Emergency Price Control Act of 1942 * * *.' It cannot be said that the 1946 registrations superseded the 1942 registration unless they applied to different premises; for it is well settled that the maximum rental, as established by the Controlled Housing Rent Regulation, cannot be changed by the mere action of the landlord in filing new registration statements. These registration statements are not binding on the Expediter and in themselves afford no warrant to the landlord to charge a rental higher than the original rental fixed at the freeze time. The registration statement merely informs the Expediter of the present status of the property; it does not establish the maximum rent. * * *

"Furthermore, on December 1, 1942, the Price Administrator issued an interpretation (O. P. A. Service, 200:1222) which stated that a dwelling rented on the maximum rent date for a specified amount, and subsequently rented as two units for a greater collective amount, must revert to the original rent when the unit is re-rented as originally registered. This interpretation is controlling and should not be ignored unless plainly erroneous. * * *

"The evidence shows that no major alterations were made in 1946, when the apartment was divided into two units and rented to two separate tenants, or at any time thereafter. The only physical changes were the addition of a pantry and the division of the two units by either two glass doors or partitions * * *. The two units together comprised exactly the same space as the original single unit, and there was only one bathroom and one kitchen for the two units.

"We find no * * * legal duty on the part of the Housing Expediter to advise a landlord of the maximum rental he may charge upon his filing additional registration statements."

An order may be entered in accordance with these findings of fact and conclusions of law.